### L. S. & M. S. RAILWAY CO. v. ALBERT E. HARRIS, AS ADM'R OF CORA E. HARRIS.

1. FAILURE TO GIVE STATUTORY SIGNALS—NOT PROXIMATE CAUSE.

The failure to give the statutory signals, by bell and whistle, of the approach of a train to a highway crossing cannot be a ground for recovery in an action for wrongful death where it appears that the train, after passing the crossing and several hundred feet therefrom, struck the decedent as she attempted to cross the tracks on the private grounds of the company, where people were in the habit of crossing.

2. ERRONEOUS APPLICATION OF RULE OF CONDUCT AFTER DISCOVERY OF DANGER.

In such case, it was error for the court to charge: "If the decedent in this case was negligent in going upon the track in the manner and at the time she did, yet, if the engineer in charge of the train, ought, by the exercise of ordinary care, to have seen the decedent in her perilous position and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to have avoided the collision, and failed so to do, it would be negligence for which the company is liable, notwithstanding the negligence of the decedent in going upon the track."

3. WHERE CONTRIBUTORY NEGLIGENCE APPEARS—DUTY TO DIRECT VERDICT.

    In such a case, if the undisputed facts clearly establish negligence on the part of the decedent in failing to look and listen for the approaching train, it becomes the duty of the court to instruct the jury to return a verdict for the defendant.

T. E. Hoyt and A. J. Trunkey, for plaintiff.

Theodore Hall, for defendant.

LAUBIE, J.

This is a proceeding to reverse a judgment of the court of common pleas rendered in favor of defendant in error for the claimed wrongful killing of the decedent by the plaintiff in error.

It appears from the evidence in the case that the decedent, Cora E. Harris, went to the depot of the company at Geneva for the purpose of taking east-bound train, No. 28. On arriving there before the train was due, she passed over the tracks and grounds of the company to the Knapp & Pratt Manufacturing Company's plant, located north of the tracks, to see her husband, the present administrator, the depot being on the south. There were two main tracks, the west-bound track being the one next to the depot, as the trains of that road run on the left-hand track. Adjoining that on the north and in close proximity was the east-bound track; adjoining that, and in close proximity, was a side-track, and then about forty feet north of that was one or more other side-tracks. It seems that there was a way or footpath there, used by the company's employes in going from the passenger station across to the north side of these tracks to the freight depot. It was also in evidence that there was a path used by the public, and by the employes of this manufacturing company without objection on part of the railway company, that ran from a point opposite the center of the station platform to that company's plant in a slightly northeasterly direction, but not visible across the railway tracks. Mrs. Harris came back on this latter path from the Knapp & Pratt Manufacturing plant toward the passenger station and was struck by train No. 23, which was running west over the south track, and was thrown on to the station platform, dead. This was a fast train that did not stop at Geneva.

It seems there was a street called "North Broadway," which intersected the tracks east of the passenger station. The distance from the passenger station to North Broadway was definitely fixed by the husband of the decedent, the plaintiff administrator, who testified that he counted the rails from North Broadway to the passenger depot, and there were seventeen rails; and it was shown that the rails were thirty feet in length. So the distance was over five hundred feet instead of two hundred and fifty, as alleged in the petition.

Exception was taken to the charge of the court in regard to this crossing, which charge is as follows:

" It is claimed that the decedent's death was caused by the negligence of the defendant:

" First, by running of train No. 23, at a high and dangerous rate of speed near to the depot and over a crossing used by the public in crossing its tracks to certain buildings or shops located upon the opposite side of said depot, and its failure to give notice or warning by sounding its whistle at not less than eighty or more than a hundred rods before reaching North Broadway, a public highway, located east of the depot, and in not ringing its bell until it had passed over said North Broadway crossing. 　*　*　*

" And we say to you gentlemen, as matter of law, it was the duty of the railroad company to sound its whistle not less than eighty nor more than one hundred rods before reaching the crossing at North Broadway, and to ring or cause to be rung the bell from said engine until said street was crossed."

So that the court gave to the jury, as one of the issues in the case, that if the whistle was not blown a statutory distance before the train reached Broadway crossing, and the bell rung, then the plaintiff might recover. What had that to do with the decedent crossing the tracks of the company beyond, and five hundred feet distant from such street? She was not upon that crossing, nor near to it, nor upon that street. What duty did the company on this occasion owe to her in regard to Broadway crossing? The failure to give such signals had no possible connection with her injury, and could not have, as she was not upon or near to that highway. It was only to persons on such highway that such duty was due, and the court submitted to the jury an issue that ought not to have been submitted to it; and for aught we know the jury based its verdict solely upon that very proposition, because there was evidence that such signals were not given for North Broadway; and in this respect the court, as we think, erred.

Another exception was taken by defendant below to the court's giving to the jury, at the request of the plaintiff's counsel, the following instruction:

" If the decedent in this case was negligent in going upon the track in the manner and at the time she did, yet, if the engineer in charge of the train, ought, by the exercise of ordinary care, to have seen the decedent in her perilous position and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to have avoided the collision, and failed so to do, it would be negligence for

which the company is liable, notwithstanding the negligence of the decedent in going upon the track."

In the general charge the court instructed the jury along the same lines, but not so clearly and unequivocally as in this request.

The meaning and effect of this request clearly was that the plaintiff might recover although the decedent had been guilty of the same degree and kind of negligence as the engineer—failure to see her peril and avoid the collision, which she might have done, and could have done, in the exercise of ordinary care.

Now, this is opposed to all our ideas of contributory negligence and its effect. It is opposed to the settled law of the state,—settled by many decisions of the court of last resort, unless those decisions have been set aside and reversed by the case referred to and relied upon by counsel for defendant in error. Railway Co. v. Schade, 57 Ohio St. 650 [50 N. E. Rep. 1133]. Up to that time it certainly was the law of this state that a person approaching a known railroad crossing was obliged to use his senses of sight and hearing to ascertain whether there was a train approaching which might cause him injury in case he got upon the track of the railway company, and that if he did not, without a reasonable excuse therefor, and was injured upon the track, he could not recover, unless, indeed, it was alleged and proved that the engineer actually saw such person in his perilous position in time to have stopped the train, in the exercise of ordinary care, and have prevented the injury.

The case of Railway Co. v. Schade, *supra*, was taken on error to the Supreme Court from the circuit court of the eighth circuit and affirmed. The case as reported by the circuit court, 8 Circ. Dec. 316 (15 R. 424), contains the charge of the trial court upon the question (from which the charge in the case at bar was copied), and is as follows:

" 4. If the decedent in this case was negligent in going upon the track in the manner and at the time he did, yet, if the engineer in charge of the train, ought, by the exercise of ordinary care, to have seen the plaintiff in his perilous position, and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to avoid the collision, and failed to do so, it was negligence for which the company is liable, notwithstanding the negligence of the decedent in going upon the track."

This charge having been upheld as good law by the circuit court, the case was taken to and was affirmed by the Supreme Court in Railway Co. v. Schade, 57 Ohio St. 650, as I have stated, but without report.

On what ground it was affirmed the Supreme Court has left us in doubt. Was it because there was no legal bill of exceptions, or because no exception was taken to the charge, or because from the undisputed

evidence the plaintiff was entitled to recover anyhow, and therefore the charge was not prejudicial? The court has given us no light upon the question. Can it be assumed as a fact that the Supreme Court would thus undertake to reverse the numerous former decisions of that court, and the settled law of the state, without a word of explanation? Certainly not. If the court intended to do so, it would have discussed the matter and stated the reasons for such reversal. But we are not left in this position of doubt. If the Supreme Court did undertake in the case just referred to, to reverse and upset the former rulings of that court upon this question (which I do not believe it did), the case of Lake Shore & M. S. Railway Co. v. Ehlert, Admr., 63 Ohio St: 320 [58 N. E. Rep. 812], shows that the court has returned to its original holdings. That case also went up from the Cuyahoga county circuit court, reported in 10 Circ. Dec. 443 (19 R. 177). In that case Christian Holtz, the decedent, was killed upon the crossing of the Big Four Railway at Barton street, in the city of Cleveland; over which the Lake Shore ran trains. There were gates and a flagman at the crossing. There was no arm of the gates over the sidewalk, but over the street the gates were down. Holtz approached on the sidewalk and placed himself near to the first or south track where he stopped and stood watching and awaiting the passage of a train on the second or north track, when a train approached from the opposite direction on such first track, which he did not see or hear, and he was struck by it and killed. Now the same claim was made by counsel for plaintiff in that case and the same charge, substantially, given in regard to it as in Railway Co. v. Schade, *supra*, and we have it on page 447 (19 R. 182) in the opinion rendered by Caldwell, J., as follows:

"Further, I say to you, gentlemen, that although the decedent may have been guilty of negligence in putting himself in a dangerous position, a position in which he was liable to be injured by the passing of the trains, yet if the employes of the railroad company in charge of said passenger train, knew of his danger, or might have known of his danger, by the exercise of ordinary care, and, by the exercise of ordinary care thereafter, controlled and stopped and managed the train in such a manner as to save the decedent from the injury and from death, it was their duty to do it; but, if they failed to do it, under such circumstances, that failure would be the approximate cause of the death, and not negligence in getting into or going into a place of danger."

In affirming this charge, Judge Caldwell said:

"I have already said that Christian Holtz was to blame in part for his own death. He was guilty of contributory negligence.

"Now, here is the proposition in law given yb the court to the jury;

Railway Co. v. Harris.

saying to them that notwithstanding a party may contribute to his own injury, yet if his negligence can be seen and known by the defendant in time to protect him or save his life, and it fails to do it, then such negligence of the defendant is the proximate cause, and that of the plaintiff is the remote cause, and the party may recover. * * *

" This is a proposition that has undergone a vast amount of discussion by the courts. A large number of states hold it to be the law. The United States court holds it to be the law, and as we understand it, this state holds it to be the law.

" In Railway Co. v. Kassen, 49 Ohio St. 230, there was much discussion as to whether that case settled this principle of law or not. But a case went from this county to the Supreme Court, that involved the question fairly and squarely, and the Supreme Court affirmed the opinion of this court, or affirmed the case wherein this court had allowed a charge of that nature to stand." L. S. & M. S. R. R. Co. v. Schade, 8 Circ. Dec. 316 (15 R. 424). Affirmed by Supreme Court without report, 57 O. S. 650.]

" We think that has settled the law of Ohio, and that this is a proper charge if the facts warrant it."

So the learned judge in thus announcing the majority opinion of the court, stated that it now had become the settled law of the state that in such a case plaintiff might recover, although he was guilty of precisely the same grade of negligence as the servants of the defendant.

We cannot think so. Let us consider the effect of such a proposition for a moment.

Two persons walking very rapidly upon a sidewalk come in collision and both are injured. If each could have seen the other in time to have avoided the collision, then each would be equally guilty of negligence; can each recover in such a case, or which one may recover? Where a party with a team and loaded wagon undertakes to cross the track of a known railroad, and a train comes along and strikes the wagon, as in the case of Railway Co. v. Shade, *supra*, and kills driver and horses, and the train be thrown off the track, when the driver of the team and of the engine could each have avoided the collision by looking out for the danger, but neither did; or, where at a crossing of two railroads, trains of the respective roads come in collision, which might have been avoided had either engineer looked along the other's track, which party can recover of the other? Such cases have occurred. May each recover of the other, or is it the one that first sues that can recover? Or, it is to be contended that the rule applies only where but one of the parties is injured? These questions are substantially answered by the Supreme

Court in disposing of Lake Shore & Michigan Southern Railway Co. v. Ehlert, 63 Ohio St. 320 [58 N. E. Rep. 812], and this is the syllabus:

"1. When the gates across a highway at a railroad crossing are closed, they definitely warn the public that the crossing, whether it is of a single, or a double track, is, for the time being, to be used for the passage of trains.

"2. One, who with the knowledge of such warning, passes a closed gate and takes a position upon the crossing is guilty of negligence which will prevent a recovery for injuries he may receive from a passing train.'

And the case was reversed, but why? If the doctrine given to the jury, and affirmed by the circuit court was correct—if such doctrine had become the settled law of the state by the affirmance of Railway Company v. Schade, *supra*, then why did not the Supreme Court affirm, instead of reversing this case of Railway Company v. Ehlert, Admr.? The jury under the evidence must have founded its verdict directly upon the proposition given to it by the trial judge, that although the decedent was negligent in the respects claimed, yet, if the engineer could have seen him and saved him from injury, by the exercise of ordinary care, the plaintiff would be entitled to recover. The Supreme Court in reversing the case held otherwise, and returned to, if it ever did abandon, the doctrine of the effect of contributory negligence in defeating recovery, where either party might have avoided the injury by the exercise of ordinary care. True, the Supreme Court, in reversing this case, did not refer to, notice, or expressly disapprove of the charge of the trial court and the assumption of its legality by the circuit court by reason of the affirmance of Railway Co. v. Schade, *supra*; but to place the matter beyond question, the doctrine that "ordinary care requires that a person in the full enjoyment of the faculties of sight and hearing, before attempting to pass over a railroad track, should use them for the purpose of discovering and avoiding danger from an approaching train; and an omission to do so, without reasonable excuse therefor, is negligence which will defeat an action by such person to recover damages for an injury to which such negligence contributed," as held in Railway Co. v. Crawford, 24 Ohio St. 631; Railway Co. v. Elliott, 28 Ohio St. 340; and Railway Co. v. Rathgeb, 32 Ohio St. 66, was expressly upheld, affirmed and applied in the case of Wabash Ry. Co. v. Skiles, 64 Ohio St. 458.

The case of Cincinnati, H. & D. Co. v. Kassen, 49 Ohio St. 230, has no bearing upon the question, as the holding in that case was predicated upon the fact that the servants of the company had actual notice, or that which amounted to the same thing, of the perilous posi-

tion of the deceased in time to have saved him, and yet made no effort to do so.

We therefore hold that the court in this case erred in its instructions to the jury on this point.

It is also claimed that the verdict in this case is contrary to the evidence, and as may be inferred from what I have said, we find that claim to be correct.

I have stated some of the facts, but not all by any means bearing upon this question. It was shown upon the part of the defendant below, that from the tracks, and especially as far north as the third track north of the station platform, one could see along the track on which this train was coming for a great distance—that any one looking to the east could see the train approaching for some miles. What did the decedent do? The evidence is, that she looked neither to the east nor the west; that she was running until she approached near to the south track on which this train was approaching from the east, when she dropped into a walk and was struck evidently when near the south rail, as she was thrown to the south onto the station platform. The evidence further shows that people on the platform were yelling to her to stop; men were waving their hats at her, and some one looking out of the telegraph office, in the excitement of the moment, as an expression of the situation, exclaimed, "My God, that woman is going to try to cross." Everybody saw the train coming. Everybody heard it. Did she? If she did not, it was her own fault.

The warnings were sufficient in every way, and the train that she wanted to take (No. 28), was still a mile or more to the west, and did not arrive for several minutes after this accident, so that it was not necessary that this unfortunate woman should have rushed into this danger for the purpose of making sure that she should make her train.

These facts make it plain that there could be no recovery in this case; that there were no disputed questions of fact to submit to the jury, and for the errors stated, the case will have to be reversed and remanded.